NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARIA MANNINO, PETITIONER, v. DAVIS BAKING
POWDER COMPANY, RESPONDENT.

Death—Overtime Compensation—Employe was Paid by Hour,
Based on a Working Day of Eight Hours, Five and One-
half Days Per Week—Overtime was Compensated at the
Rate of One and One-half Times Regular Time Wages—
Held, That the Facts as They Here Appear Preclude Com-
pensation Based on Overtime Earnings.

On determination of facts and rule for judgment.

For the petitioner, *Joseph F. Fitzpatrick.*

For the respondent, *McCarter & English.*

It was admitted by the respondent that the deceased em-
ploye died as the result of an accident arising out of and in
the course of his employment with the respondent. The de-
pendency alleged in the petition is not questioned by the re-
spondent, and since the death of the decedent respondent has
been paying compensation to his said dependents.

The sole question in the case was whether or not, in ad-
dition to compensation based on deceased's wage rate, his
overtime is also compensible under the particular facts. The
testimony is undisputed and conclusive that the contract hire
between the deceased and the respondent at the time of the
accident, was that he was paid by the hour for an eight-hour
day and a five and one-half day week. His employment be-
gan at eight A. M. and ended at five P. M., with an hour at
noon for lunch. It was clearly shown that the customary
number of working hours constituting an ordinary working
day in the character of the work involved were eight; that
the wage rate at which the service was recompensed under the
contract of hire in force at the time of the accident was

forty-nine cents per hour, which amount amounts to $22.05 per week. Decedent was an old employe and, in addition to his regular employment, was given all possible opportunity at overtime. For all such overtime he was specially authorized in every instance by his foreman and was paid overtime rates, viz., time and a half.

The 1913 amendment to the Compensation act (*Pamph. L.* 1913, *p.* 313), which is the present law, says with reference to wages:

"Wherever in section two of this act the term "wages" is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident * * *."

The act never expressly excluded overtime with reference to hourly employment, but this particular question, if any, was settled by our Supreme Court in *Smolenski* v. *Easton Coal Co.*, 87 *N. J. L.* 26; *affirmed*, 88 *Id.* 387. In that case, Mr. Justice Swayze held (at *p.* 288):

"We think it may fairly be held that the legislature meant that the daily wages should be taken to be what would be earned by working for the ordinary number of hours and *that the employe was not to lose by reason of enforced idleness during some of those hours, nor to gain because on some days he worked overtime.*

"Wages, the legislature said, must be construed to be the *money* rate at which the services were recompensed. *What is to be considered is not the recompense in fact received, but the rate which the contract of hiring fixed, whether that rate was in fact realized for the whole time or not.* We think that in an employment and in a community where the regular working week was six days of ten hours each and the workman was paid twenty-five cents an hour, the natural conclusion of most men, if they tried to reduce the hourly rate to a weekly rate, would be that the weekly rate was $15."

Immediately after the affirmation of the Smolenski decision by the Court of Errors and Appeals came the 1919 amendment to the Compensation law, the present governing

statute, which for the first time mentions hourly employment. This reads (at *p.* 213) :

"Where the rate of wages is fixed by the hour, the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of the work involved."

It is obvious that the statute is based on the Smolenski case. That decision was followed in *Wright* v. *Smith,* 38 *N. J. L. J.* 232, where compensation was awarded on an eight-hour day, five and one-half day week basis, the regular week of the decedent, though at the time of the accident he had not been actually working full weeks. It follows, therefore, that the decedent's overtime in this case and under the particular facts, is not compensible, and that the wage rate on which compensation is to be based in this case is $22.05. It happens that the rate at which compensation has been, and is being paid by the respondent, is $24.75, which is more than the $22.05 rate to which the dependents are here entitled. This because the rate was not finally calculated by respondent until the formal hearing. Respondent, however, stated in open court that the rate at which it has been paying compensation will be continued and is agreeable to having compensation fixed in accordance therewith.

The dependents are the widow and four children: Rose, born July 8th, 1917; Peter, born February 4th, 1919; Sadie, born April 4th, 1921, and Anna, born December 3d, 1924.

It is therefore ordered that respondent pay the above-named dependents compensation as follows :

Fifty-five per cent. of $24.75, the weekly wage rate consented to by respondent for three hundred weeks; thereafter, fifty per cent. of said rate for eighty-five and six-sevenths weeks; thereafter, forty-five per cent. of said wage rate for eighty-two and two-sevenths weeks; thereafter, forty per cent. of said wage rate for one hundred and twelve and six-sevenths weeks; thereafter, thirty-five per cent. of said wage rate for one hundred and ninety-one and two-sevenths weeks. It is to be noted that respondent has already paid the dependents from the date of death of the deceased to March 14th, 1927,

fifty-six weeks at the fifty-five per cent. rate, and that the funeral allowance of $150 has also been paid by the respondent.

CHARLES E. CORBIN,
*Deputy Commissioner.*